IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                           PLAINTIFF/RESPONDENT

     V.                          Case No. 6:10-cr-60032-001

DETRIC CONWAY                                      DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody filed September 4, 2014. (Doc. 123) The United States filed its Response on October 7, 2014. (Doc. 128) Petitioner filed a Traverse to the government's Response on October 24, 2014. (Doc. 130) Petitioner filed a Motion for Summary Judgment on December 22, 2014. (Doc. 133)The United States filed its Response to the Motion for Summary Judgment on January 5, 2015. (Doc. 134) The matter is ready for Report and Recommendation.

### I. Background

On November 4, 2010, Defendant/Petitioner, Detric Conway ("Conway"), was named in an eight-count Indictment charging him with the following offenses: (Count One) that on or about June 21, 2010 Conway did unlawfully obstruct, delay, and affect commerce by robbery in violation of 18 U.S.C. § 1951(a); (Count Two) that on or about June 21, 2010, Conway, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is Interference with Commerce by Robbery as charged in Count One of the Indictment, did knowingly use, carry, and possess in furtherance of said crime of violence, a firearm, in violation of 18 U.S.C. § 924(c)(1)(A); (Count Three) that on or about June 21, 2010, Conway did knowingly and

intentionally possess with the intent to distribute hydrocodone, a Schedule II controlled substance, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(C); (Count Four) that on or about June 21, 2010, Conway, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, Possession with Intent to Distribute Hydrocodone as charged in Count Three of the Indictment, did knowingly use, carry, and possess in furtherance of said drug trafficking crime, a firearm, in violation of 18 U.S.C. § 924(c)(1)(A); (Count Five) that on or about July 13, 2010, Conway, and two others, aiding and abetting each other, did take from the person or presence of another by force, violence and intimidation, controlled substances in the care, custody, control, management, and possession of a pharmacy registered with the Drug Enforcement Administration, and the replacement costs of the controlled substances was not less than five hundred dollars, in violation of 18 U.S.C. §§ 2118(a) and (c)(1) and 18 U.S.C. § 2; (Count Six) that on or about July 13, 2010, Conway, and two others, aided and abetted by each other, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, Robbery Involving Controlled Substances as charged in Count Five of the Indictment, did knowingly use, carry, and possess in furtherance of said crime of violence, a firearm, in violation of 18 U.S.C. § 924(c)(1)(A); (Count Seven) that on or about July 13, 2010, Conway, and two others, aided and abetted by each other, did knowingly and intentionally possess with the intent to distribute hydrocodone, a Schedule II controlled substance, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; and, (Count Eight) that on or about July 13, 2010, Conway, and two others, aided and abetted by each other, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, Possession with Intent to Distribute Hydrocodone as charged in Count Seven of the Indictment, did knowingly use, carry, and possess in furtherance of said drug trafficking

-2-

crime, a firearm, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 1)

Conway appeared for arraignment on December 15, 2010, and he entered a not guilty plea to each count of the Indictment. (Doc. 9)

On September 12, 2011, Conway appeared, with his appointed counsel, Morse Gist, before Hon. Robert T. Dawson, for a change of plea hearing. (Doc. 56) A fourteen (14) page written plea agreement was presented to the Court, and Conway plead guilty to Counts One, Two, Five and Six of the Indictment. (Doc. 57, ¶ 1)) The plea agreement further provided that upon the Court's acceptance of the plea agreement, and once the Court has pronounced sentence, the government will move to dismiss Counts Three, Four, Seven and Eight of the Indictment. (Doc. 57, ¶ 1) The Court tentatively approved the plea agreement and ordered a Pre-Sentence Investigation Report ("PSR"). (Doc. 56, 102)

On July 9, 2012, nearly ten months after his change of plea hearing, Conway filed a Motion to Withdraw Guilty Plea. (Doc. 66) Conway asserted that he "was unclear as to what the minimum sentence would be on Count Two . . . and Count Six" because he "was lead to believe that he would be facing ten to twelve years rather than the current thirty-two years of imprisonment," but that he "admit[ted] his guilt to those offenses." (Doc. 66, p. 2) Conway also argued "that the [g]overnment had made a promise that [it] would interview him for the purposes of cooperation in being truthful about his role in the incidents," but "ha[d] never interviewed [him]," and "it was his understanding that he would get a downward departure from his sentence." (Doc. 66, p. 2) Finally, Conway "assert[ed] that Count Six, using, carrying, and possessing a firearm in furtherance of a drug trafficking crime, occurred at the completion of the robbery when the particip[ants] were fleeing," and "that he cannot be guilty of th[is] . . . § 924(c) offense as he was caught prior to the commission

-3-

of 'furthering a drug trafficking offense.'"[1]

The District Court held a hearing on Conway's Motion to Withdraw Guilty Plea on July 27, 2012. (Doc. 70) Conway testified that his previous counsel "came to see [him] about three times before [he] signed [his] [p]lea [a]greement," and that he signed the plea agreement because his counsel repeatedly told him "that with a [§] 5(k)(1), you [are] going to get 10 to 12 years." Conway stated that he and his counsel "wasn't seeing eye to eye," and that he wanted to go to trial so that the truth would come out about his involvement in the pharmacy robberies. (Doc. 97, pp. 17-20) Upon questioning by the District Court, Conway acknowledged knowing that there was a 25-year mandatory minimum sentence on Count Six, and that the sentence imposed on Count Six would run consecutively to any other term of imprisonment imposed. (Doc. 97, pp. 21-22) When asked if he remembered responding to the District Court at the change of plea hearing that "it will be like stacked, 25 years plus seven," Conway testified that he remembered "some parts of it." (Doc. 97, p. 22) In fact, Conway testified at the change of plea hearing as follows:

"The Court:          . . . And again, have you discussed with Mr. Gist what is meant by that term, a mandatory term of imprisonment for 25 years?

The Defendant:     Yes.

The Court:          And what do you think it means?

The Defendant:     The mandatory minimum is 25 years.

The Court:          There's also, there's a direction, (c) - - this is within paragraph 9(c),

---

[1]Count Six actually charged Conway with using, carrying, and possessing a firearm in furtherance of a crime of violence, that is robbery involving a controlled substance. Count Eight, to which Conway *did not* plead guilty and which was subsequently dismissed, concerned using, carrying, and possessing a firearm in furtherance of a drug trafficking crime.

-4-

the top of page 8 - - that any term of imprisonment imposed as to Count 6 shall not run concurrently with any other term of imprisonment imposed. Have you discussed with Mr. Gist what is meant by that phrase, 'shall not run concurrently with any other term of imprisonment imposed'?

The Defendant:     Yes.

The Court:     Do you think you understand what that means?

The Defendant:     Yes, sir.

The Court:     What do you think it means?

The Defendant:     It will be like stacked, 25 plus seven." (Doc. 102, p. 7)

When asked on cross-examination where the alleged promise for a § 5(k) was in the plea agreement, Conway testified, "I never said nothing about no promise." (Doc. 97, p. 24) Conway claimed that the government "did not honor the [§] 5(k)(1);" but, when pressed to review Paragraph 17 of the written plea agreement, Conway replied that it "[d]oes not promise any specific sentence," and Conway agreed that it did not "promise [him] anything." (Doc. 97, pp. 26-27)

The District Court denied Conway's Motion to Withdraw Guilty Plea, finding that there was "no fair and just reason" to justify the requested withdrawal. The Court explained that at the arraignment the sentencing ranges were given, and that "at the change of plea hearing . . . the [c]ourt went into substantial detail to explain . . . mandatory minimums and the sentences that could be possible, and Mr. Conway said he understood that." The Court also noted that Conway never objected to the pre-sentence report (PSR), which was dated almost five months prior to Conway's motion to withdraw his guilty pleas. (Doc. 97, pp. 28-29)

A PSR was submitted by the United States Probation Office on March 22, 2012, a Base Offense Level of 20 was assessed on Count One (PSR, ¶ 23); this was increased 4 levels for specific offense characteristics (PSR, ¶¶ 24-25), resulting in an Adjusted Offense Level of 24 on Count One (PSR, ¶ 29). A Base Offense Level of 20 was assessed on Count Five (PSR, ¶ 30); this was increased 2 levels for specific offense characteristics (PSR, ¶¶ 31-32), resulting in an Adjusted Offense Level of 22 on Count Five (PSR, ¶ 36). After application of the multiple-count adjustment, the Combined Adjusted Offense Level for Counts One and Five was determined to be 26. (PSR, ¶ 42) After a 3 level reduction for acceptance of responsibility, Conway's Total Offense Level was determined to be 23. (PSR, ¶¶ 43-44). The PSR advised that, pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence for a violation of 18 U.S.C. § 924(c) is the minimum term of imprisonment required by statute; and, that the guideline sentence for Count Two is seven years, to be served consecutively to the sentences imposed for Counts One, Five and Six, and that the guideline sentence for Count Six is 25 years, to be served consecutively to the sentences imposed for Counts One, Two and Five. (PSR, ¶ 45) Conway's criminal history score of 17 placed him into Criminal History Category VI. (PSR, ¶ 57) The statutory range for the offenses of conviction called for not more than 20 years imprisonment on Count One; custody of not less than seven years, with a maximum term of life, on Count Two, to run consecutive to any other count; not more than 25 years on Count Five; and, custody of not less than 25 years, with a maximum term of life, on Count Six, to run consecutive to any other count. (PSR, ¶¶ 77-80) Conway's advisory guideline range was determined to be 92 to 115 months imprisonment on Counts One and Five; 84 months on Count Two, which would be consecutive to any other count; and, 300 months on Count Six, which would be consecutive to any other count. (PSR, ¶ 81)

Conway appeared for sentencing on July 27, 2012. (Doc. 98) The Court varied from the advisory guideline range and sentenced Conway to 48 months imprisonment on Counts One and Five, to run concurrently, followed by two years supervised release, no fine, restitution of $500.00 on Count One, and imposition of a $100.00 special assessment on each count. A sentence of 84 months imprisonment was imposed on Count Two, to run consecutive to Counts One and Five, followed by five years supervised release, no fine, restitution of $61,952.61 to be joint and several with Conway's two co-defendants, and imposition of a $100.00 special assessment. A sentence of 300 months imprisonment was imposed on Count Six, to run consecutive not only to Count Two but also consecutive to Counts One and Five, to be followed by five years supervised release, no fine, and imposition of a $100.00 special assessment. (Doc. 98, pp. 25-26)  Judgment was entered by the Court on July 31, 2012. (Doc. 78)

Conway then timely filed an appeal to the Eighth Circuit Court of Appeals. (Doc. 88) On appeal, Conway argued that the District Court abused its discretion in denying his motion to withdraw his guilty pleas. Specifically, Conway contended that the government acted in bad faith and breached ¶ 17 of the plea agreement. In an Opinion filed on June 12, 2013, the Eight Circuit found that the government had "expressly retained" its discretion to file a § 5(k)(1) motion, that Conway had not made a substantial threshold showing that the government acted in bad faith, and that the District Court did not err in denying Conway's motion to withdraw his guilty pleas. (Doc. 106-1) A Mandate was issued on July 9, 2013. (Doc. 106)

On September 5, 2014, Conway timely filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"). (Doc. 123) The Motion raises one issue: that his trial and appellate counsel were both ineffective, their

performance deficient, and their actions prejudicial to Conway, by failing to raise a double jeopardy claim in connection with his convictions and sentences under 18 U.S.C. § 2118(c)(1) (Count Five) and 18 U.S.C. § 924(c) (Count Six). (Doc. 124, p. 2)

The United States' Response in opposition to the Motion was filed on October 7, 2014. (Doc. 128) Conway filed a Traverse to the government's Response on October 24, 2014. (Doc. 130) Conway subsequently filed a Motion for Summary Judgment on December 22, 2014. (Doc. 133) The United States filed its Response to the Motion for Summary Judgment on January 5, 2015. (Doc. 134)

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Conway's Motion and the files and records of this case conclusively shows that Conway is entitled to no relief, and the undersigned recommends the denial and dismissal

of Conway's § 2255 Motion with prejudice without an evidentiary hearing[2].

## A. Ineffective Assistance Of Counsel Claims

To prove a claim of ineffective assistance of counsel, Conway must demonstrate both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, Conway must show that his counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. To establish the prejudice prong of the *Strickland* test, Conway must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Conway plead guilty to the offenses of conviction. When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), *citing Tollett v. Henderson*, 411 U.S. 258, 266 (1973). As the Court in *Tollett* eloquently observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advise he received from counsel was not within the standards set forth in

---

[2] The undersigned also recommends denial of Conway's related Motion for Summary Judgment.

*McMann*[3].

> A guilty plea, voluntarily and intelligently entered, may not be
> vacated because the defendant was not advised of every conceivable
> constitutional plea in abatement he might have to the charge . . . And
> just as it is not sufficient for the criminal defendant seeking to set
> aside such a plea to show that his counsel in retrospect may not have
> correctly appraised the constitutional significance of certain historical
> facts, (internal citation omitted) it is likewise not sufficient that he
> show that if counsel had pursued a certain factual inquiry such a
> pursuit would have uncovered a possible constitutional infirmity in
> the proceedings." *Id*. at 267. (Emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), *citing Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

---

[3] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

In the present case, Conway was represented by experienced appointed counsel, Morse Gist, throughout the criminal proceedings leading to and including the change of plea hearing. Mr. Gist had negotiated a written plea agreement with the Assistant United States Attorney prosecuting the case, and he carefully reviewed the plea agreement with Conway before obtaining Conway's signature on it. (Doc. 57, ¶ 26) The plea agreement informed Conway of the counts of conviction, being Counts One, Two, Five and Six of the Indictment, and of the counts to be dismissed. (Doc. 57, ¶ 1) Conway acknowledged that he had fully discussed with his counsel the facts of the case and the elements of the crimes to which he was pleading guilty; he agreed that he had committed each of the elements of the crimes to which he was pleading guilty; and, he admitted the factual basis for the pleas. (Doc. 57, ¶ 2) The plea agreement advised Conway of his constitutional and statutory rights, including the right to persist in his pleas of not guilty. (Doc. 57, ¶ 3) By signing the plea agreement, Conway admitted that he had read the agreement and had carefully reviewed every part of it with defense counsel; that he fully understood the agreement; that no promises, agreements, understandings, or conditions had been made or entered into in connection with the decision to plead guilty except those set forth in the agreement; that he was satisfied with the legal services provided by defense counsel in connection with the agreement; and, that he had entered into the plea agreement freely, voluntarily, and without reservation, and that his desire to enter pleas of guilty was not the result of any threats or coercion. (Doc. 33, ¶ 25)

During the change of plea hearing on September 12, 2011, Conway was sworn on oath and examined about the offenses to which he was pleading guilty. The Court inquired of Conway about his age and level of education; inquiry was made as to whether Conway was under the influence of alcohol or drugs, and whether Conway was able to comprehend the proceedings; inquiry was made

-11-

as to whether Conway was satisfied with his counsel; the possible severity of the sentences was explained, including applicable mandatory minimums and the consecutive nature of the sentences; Conway's constitutional and statutory rights were reviewed; and, upon such inquiry in open court, the Court determined that Conway's guilty pleas to Counts One, Two, Five and Six of the Indictment were voluntary and intelligent, and that there was a factual basis to support the guilty pleas. (Docs. 56 and 102)

Conway does not specifically allege in his § 2255 Motion that his claim of ineffective assistance of counsel rendered his guilty pleas involuntary, unintelligent and invalid. Indeed, in his motion to withdraw his guilty pleas, Conway stated as to the § 924(c) offenses (Counts Two and Six) that "[he] admits his guilt to those offenses, and continues to admit his guilt to those offenses." (Doc. 66, p. 2) Conway states in his § 2255 Motion that his "willful and criminal involvement in the armed robbery did unquestionably warranted (sic) the application of the 18 U.S.C. § 2 statute in conjunction with the predicate § 2118(c)(1) statute," however "the prosecution's reapplication of the multiple 18 U.S.C. § 2 statue (sic) again in conjunction with the duplicitous second § 924(c) statute [count 6] to readdress Conway's singular act (offense) of 'grabbing drugs' during the armed robbery, undeniably 'require[d] [the] re-litigation of factual issues already resolved by the first prosecution [under § 2118(c)(1) & 18 U.S.C. § 2].'" (Doc. 124, p. 6) In his Traverse to the government's Response to the § 2255 Motion, Conway clarifies again that he is not claiming actual innocence of aiding and abetting the use of a firearm in a pharmacy robbery, and he "concedes that he is indeed guilty of aiding and abetting an underlined armed individual in the commission of a robbery," but that his argument "is simply that he cannot be held liable for his codefendant's gun under both 18 U.S.C. § 2118(c)(1) . . . and 18 U.S.C. § 924(c) . . . based exclusively on his singular and exact same conduct

of 'grabbing drugs.'" (Doc. 130, p. 3) Put another way, Conway does not allege that his guilty pleas were rendered involuntary, unintelligent and invalid by virtue of ineffective assistance of counsel, but that his counsel's failure to recognize and raise a double jeopardy claim in connection with his pleas of guilty to Counts Five and Six subjected him to successive punishments in violation of the Double Jeopardy Clause. To the extent that Conway's § 2255 Motion does not directly challenge the voluntary and intelligent character of his guilty pleas, it is deficient and subject to dismissal. Counsel's failure to correctly appraise the constitutional significance of certain facts, or counsel's failure to pursue a particular factual inquiry that would have uncovered some possible constitutional infirmity in the proceedings, are both insufficient to support vacating a guilty plea voluntarily and intelligently entered. *Tollett*, 411 U.S. at 267. To the extent that the allegations of his § 2255 Motion may be construed to indirectly challenge the voluntary and intelligent character of his guilty pleas, the alleged double jeopardy claim lacks merit and is subject to summary dismissal.

## B.  Double Jeopardy Not Violated

Conway contends that he cannot lawfully be punished under both § 2118(c)(1) and § 924(c) "based solely and exclusively on his co-defendant's brandishing of a firearm - especially where Conway's singular and exact same offense encompassed only 'grabbing drugs' while his 'co-defendant, not [Conway] . . . held the victim at gunpoint during the robbery.'" (Doc. 124, p. 6) Conway's contention is legally incorrect.

### 1.  *Missouri v. Hunter* and Legislative Intent

Conway ignores a seminal case concerning multiple punishments and the Double Jeopardy Clause - the United States Supreme Court's decision in *Missouri v. Hunter*, 459 U.S. 359 (1983). The Court there noted that "[t]he Double Jeopardy Clause is cast explicitly in terms of being 'twice

-13-

put in jeopardy,'" and that "[w]e have consistently interpreted it 'to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" 459 U.S., at 365. That case, as here, involved only one trial, but the issue concerned multiple punishments for the same conduct. The defendant in *Hunter* was convicted of both first degree robbery and armed criminal action under Missouri law arising from the armed robbery of a supermarket. The Missouri Supreme Court vacated the defendant's conviction for armed criminal action on the basis that the Double Jeopardy Clause also "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711 (1969). The United States Supreme Court found that the Missouri Supreme Court had "misperceived the nature of the Double Jeopardy Clause's protection against multiple punishments." *Id*, at 366. So has Conway.

The Supreme Court in *Hunter* held that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." 459 U.S., at 678. The Court then discussed its earlier decisions in *Whalen v. United States*, 445 U.S. 684 (1980) and *Blockburger v. United States*, 284 U.S. 299 (1932). Quoting from *Blockburger*, the Court stated, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id*, at 366, quoting from 284 U.S., at 304. As recognized by Conway, this has become known as the "same elements" or "*Blockburger* test."

What Conway fails to recognize or address, however, is that the "*Blockburger* test" merely established a rule of statutory construction regarding multiple punishments for the same conduct

-14-

under two different statutes when there is no clear indication of legislative intent to impose multiple punishments. In *Whalen*, the Court noted that:

> "The assumption underlying the rule is that Congress *ordinarily* does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent*." 445 U.S., at 691-92 (emphasis in original).

The *Whalen* Court went on to further emphasize the qualification of that rule, that "where the offenses are the same . . . cumulative sentences are not permitted, *unless elsewhere specifically authorized by Congress*." *Id*., at 693 (emphasis in original). Under that rule of statutory construction, the Court in *Whalen* found no "clear indication of contrary legislative intent," and it held that cumulative punishment could not be imposed. 445 U.S., at 695.

The Court in *Hunter* next discussed its decision in *Albernaz v. United States*, 450 U.S. 333 (1981). That case addressed the issue of whether a defendant could be cumulatively punished in a single trial for both conspiracy to import marijuana and conspiracy to distribute marijuana. In contrast to the conclusion reached in *Whalen*, the Court in *Albernaz* concluded that the two statutes at issue did not proscribe the "same" offense in the sense that "each provision requires proof of a fact that the other does not." 450 U.S., at 339. The Court in *Hunter* commented that "we might well have stopped at that point," but it went on to state: "[t]he *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose *the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent*." 459 U.S., at 367, quoting from *Albernaz*, 450 U.S., at 340 (emphasis added). The Court in *Hunter* concluded its discussion of the impact of clear legislative intent with the following language quoted

from *Albernaz*:

> "The question of what punishments are constitutionally permissible
> is no different from the question of what punishments the Legislative
> Branch intended to be imposed. *Where Congress intended, as it did
> here, to impose multiple punishments, imposition of such sentences
> does not violate the Constitution*. 450 U.S., at 344 (emphasis added).

Based upon its analysis and reasoning in *Whalen* and *Albernaz*, the Supreme Court in *Hunter*

concluded that "simply because two criminal statutes may be construed to proscribe the same

conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the

imposition, in a single trial, of cumulative punishments pursuant to those statutes," and that "[t]he

rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate

clearly expressed legislative intent." 459 U.S., at 368. The *Hunter* Court then found that the Missouri

Legislature had made its intent crystal clear that multiple punishments may be imposed under the

two Missouri statutes at issue, and that the prosecutor may seek and the trial court or jury may

impose cumulative punishment under such statutes in a single trial. 459 U.S., at 368-69.

Application of these legal principles to the statutes concerned in the present case results in

the same conclusion reached in *Albernaz* and in *Hunter*. First, under the *Blockburger* test, and

contrary to Conway's assertion, the elements of the two offenses are not the same and the inquiry

could simply end there; however, it must also be noted that Congress has made its intent to impose

multiple punishments crystal clear when a defendant violates § 924(c).

18 U.S.C. § 2118 proscribes robberies and burglaries involving controlled substances. Sub-

section (c)(1), which Conway was charged with aiding and abetting and plead guilty to, provides:

> "Whoever in committing any offense under subsection (a) or (b)
> assaults any person, or puts in jeopardy the life of any person, by the
> use of a dangerous weapon or device shall be fined under this title

and imprisoned for not more than twenty-five years."

Thus, the elements of such offense are the robbery or burglary involving a controlled substance as proscribed in either § 2118(a) or (b), and in addition thereto, assaulting any person or putting in jeopardy the life of any person by the use of a *dangerous weapon or device*. As Conway points out (citing U.S.S.G. § 1B1.1, Application Note 1), the use of a firearm would satisfy the "use of a dangerous weapon or device" element of § 2118(c)(1), but so too could the use of a knife or a baseball bat. U.S.S.G. § 1B1.1, Application Note 1(D), provides that a "dangerous weapon" is (i) an instrument capable of inflicting death or serious bodily injury, or (ii) an object that either closely resembles such an instrument or an object used in a manner that created the impression that the object was such an instrument (e.g. a hand wrapped in a towel during a bank robbery to create the appearance of a gun).

18 U.S.C. § 924(c) requires that a defendant use, carry or possess a firearm during and in relation to any crime of violence or drug trafficking law. It requires, therefore, proof of a specific element - that the defendant use, carry or possess a *firearm* - that is not necessarily required to prove a violation of § 2118(c)(1). U.S.S.G. § 1B1.1, Application Note 1(G), defines a "firearm," in pertinent part, as any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. That Application Note also specifically provides that a weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a "dangerous weapon" but not a "firearm." Thus, the use of a BB gun could support a conviction under § 2118(c)(1), where it would not support a conviction under § 924(c). This, by illustration, demonstrates that the elements of the two offenses are not the same, and the *Blockburger* test is satisfied. *Cf.*, *United States v. Singleton*, 16 F.3d 1419

-17-

(5th Cir. 1994)(§ 2119 and § 924(c) fail the *Blockburger* test; but, Congress clearly intended to punish violations of those statutes cumulatively, so no Double Jeopardy violation).

The question of Congressional intent concerning § 924(c) is absolutely clear. In its prefatory clause, § 924(c)(1)(A) begins by identifying a core set of predicate offenses, i.e., crimes of violence and drug trafficking crimes, which fall within its scope. The prefatory clause then provides that a defendant who commits a predicate offense, while using, carrying or possessing a firearm, is subject to a mandatory punishment "*in addition to*" the sentence for that predicate offense. The plain language of the statute also makes clear that "no term of imprisonment imposed on a person under . . . subsection [(c)] shall run concurrently with *any other term of imprisonment* imposed on the person." § 924(c)(1)(D)(ii)(emphasis added). This provision mandates a consecutive sentence. The Supreme Court has unequivocally held that when a defendant violates § 924(c), his sentencing enhancement under that statute *must run consecutively to all other prison terms*. See, *United States v. Gonzales*, 520 U.S. 1, 9-10 (1997); *United States v. Barnett*, 410 F.3d 1048 (8th Cir. 2005); and, *United States v. Armstrong*, 124 F.3d 208 (8th Cir. 1997). Congress has clearly indicated its legislative intent that in addition to imposing a sentence on the predicate crime of violence or drug trafficking crime, a sentencing court must also impose a sentence for violation of § 924(c) that shall run consecutively to the sentence for the predicate crime. There is, therefore, no Double Jeopardy violation for imposing multiple sentences in such circumstances. See, *United States v. Doffin*, 791 F.2d 118 (8th Cir. 1986)(imposition of mandatory penalty for use of firearm during a crime of violence was not precluded by Double Jeopardy Clause, although bank robbery statute already provided for enhanced punishment when offense was committed with a dangerous weapon); *United States v. Mills*, 835 F.2d 1262 (8th Cir. 1987)(legislative history is clear that Congress amended §

-18-

924(c) with the express purpose of authorizing an additional sentence to that imposed for the underlying felony); *United States v. Jones*, 34 F.3d 596 (8th Cir. 1994)(multiple punishments for carjacking and firearm statutes do not constitute double jeopardy).

### 2.  Aiding and Abetting a § 924(c) Offense

Conway also contends that "such consecutive punishments were intended <u>only</u> for the actual user or carrier of the gun," citing *United States v. Shavers*, 820 F.2d 1375 (4th Cir. 1987) and *United States v. Foreman*, 914 F.Supp. 385 (C.D. Cal. 1996). Conway's reliance on *Shavers* is curious and misplaced, as the case does not stand for the proposition of law advanced by Conway, and in fact, held that imposition of consecutive sentences for violations of § 2113(d)(armed bank robbery) and § 924(c) did not violate the Double Jeopardy Clause. *Foreman* is contrary to Eighth Circuit precedent.

The liability of one aiding and abetting the use of a firearm in the commission of a crime of violence arose in *United States v. Simpson*, 979 F.2d 1282 (8th Cir. 1992), where the driver of the get-away car was convicted of aiding and abetting the armed robbery of a bank in Minnesota. Simpson argued that she could not be punished as an aider and abettor under both the robbery statute and the firearms statute because it amounted to double punishment in violation of the Double Jeopardy Clause. Citing *Missouri v. Hunter*, *supra*, the Court in *Simpson* found that the Double Jeopardy Clause does not prohibit the government from proving violations of two criminal statutes with the same course of conduct if Congress clearly intended to subject defendants to such multiple punishments. 979 F.2d, at 1285. Simpson argued that although Congress clearly intended to subject those who "use or carry" a firearm to double punishment, she did not do so; and, she further argued that § 924(c) does not explicitly require enhanced liability for one who aids and abets another who

-19-

uses or carries a firearm. The Court disagreed. Noting, first, that the aider and abettor statute (18 U.S.C. § 2) clearly states that the actions of the aider and abettor become those of a principal violation, and second, that § 924(c) explicitly states that one convicted as a principal of using a firearm to commit a violent crime may be punished both for the underlying crime and for the § 924(c) charge, the Court concluded that because the actions of the principal (Simpson's co-defendant) involved use of a firearm falling within § 924(c)'s prohibitions, Simpson, as an aider and abettor, was also clearly liable for the use of the firearm. 979 F.2d, at 1285. The Court further commented that, "[u]nder § 2, the acts of the principal become those of the aider and abettor as a matter of law," citing *Pereira v. United States*, 347 U.S. 1 (1954) and *Nye & Nissen v. United States*, 336 U.S. 613 (1949). *Id.* Having determined that Simpson's actions in aiding and abetting the armed robbery made her liable for the use of the firearm, she was properly liable as an aider and abettor for the enhanced gun charge, and there was no double jeopardy problem. 979 F.2d, at 1286.

In *Barrett v. United States*, 120 F.3d 900 (1997), the Eighth Circuit reaffirmed that a defendant who did not personally use or carry a firearm may be found guilty of § 924(c) as an aider and abettor. The Court stated: "[w]e have recognized that a defendant who did not personally use or carry a firearm may be found guilty of violating § 924(c)(1) under an aiding-and-abetting theory . . . and have recently held that *Bailey*[4] does not preclude the continued application of a co-conspirator theory of liability to § 924(c)(1) offenses . . . [w]e conclude the same holds true for aiding-and-abetting liability." 120 F.3d, at 901. Numerous other circuits have also held that *Bailey* did not alter the aiding-and-abetting analysis for § 924(c) offenses: see, *United States v. Malpeso*, 115 F.3d 155, 166-67 (2d Cir. 1997)("We have reaffirmed the appropriateness of aiding and abetting

---

[4]*Bailey v. United States*, 516 U.S. 137 (1995).

. . . theories of liability for § 924(c)(1) violations in several post-*Bailey* cases"); *United States v. Price*, 76 F.3d 526, 529 (3d Cir. 1996)(after *Bailey*, aiding and abetting theory of liability remains applicable to § 924 offenses); *United States v. Morrow*, 156 F.3d 1231 (6th Cir. 1998)(Unpublished)(finding district court erred in granting defendant's § 2255 petition where district court based its decision solely on *Foreman*); *Wright v. United States*, 139 F.3d 551, 552 (7th Cir. 1998)(*Bailey* did not limit the aiding and abetting theory of criminal liability under § 924(c)); *United States v. DePace*, 120 F.3d 233, 239 n. 9 (11th Cir. 1997)("[T]he Supreme Court did not limit the aiding and abetting theory of criminal liability in *Bailey*; it merely defined the term "use"), *cert. denied*, 522 U.S. 1153 (1998).

Liability under an aiding and abetting theory of liability requires the government to prove the defendant associated himself with and participated in an unlawful venture in a way that shows he wished to bring it about, and that he acted to make the unlawful venture succeed. *United States v. Devries*, 630 F.3d 1130, 1133 (8th Cir. 2011). As mentioned above, Conway admits that "he is indeed guilty of aiding and abetting an armed individual in the commission of a robbery." (Doc. 130, p. 3) In his plea agreement, Conway stipulated to being involved in the July 13, 2010 armed robbery of the Hometown Pharmacy in Hot Springs, Arkansas, during which robbery the victim was held at gunpoint, and that firearms were used to facilitate the robbery. (Doc. 57, ¶ 2(d)) He does not now dispute those facts; he only seeks to distance himself from the firearm by arguing that he only "grabbed drugs" and was not the individual brandishing the gun. As the authorities discussed above show, it matters not that Conway only "grabbed drugs" in terms of his liability under § 924(c) for aiding and abetting the armed robbery of the pharmacy.

It is also worth noting that Conway has not asserted that he had no knowledge that a co-

defendant would use or carry a firearm during the pharmacy robbery. Noting the decision in *Rosemond v. United States*, 134 S.Ct. 1240 (2014)(intent needed to aid and abet drug trafficking crime using a firearm requires knowledge beforehand that a confederate will carry a gun; defendant must have learned of the gun while he still realistically could have opted out of the crime), Conway states in his Traverse to the government's Response that, "it is legally inconsequential whether or not Conway possessed such foreknowledge as it relates to the Count Six § 924(c) and § 2 conviction . . . because any hypothetical advanced knowledge on the part of Conway concerning his codefendant's use of a firearm, has already been addressed and punished under the predicate Count Five § 2118(c)(1) and § 2 sentence/conviction." (Doc. 130, p. 5) "The Supreme Court has distinguished between a right that is inadvertently left unasserted and one that is intentionally relinquished or abandoned, noting that the latter constitutes a waiver that extinguishes the claim altogether." *United States v. Gutierrez*, 130 F.3d 330, 332 (8th Cir. 1997)(citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). By recognizing the potential issue of when a defendant must have knowledge of a co-defendant's intent to use or carry a firearm in the commission of an offense to be held liable for the firearm as an aider and abettor, but then disregarding it as "legally inconsequential," Conway has intentionally waived any claim he may have had regarding that issue.

### 3.  Counsel's Performance Was Not Deficient

As the authorities discussed above establish, Congress has clearly indicated its legislative intent that in addition to imposing a sentence on the predicate crime of violence or drug trafficking crime, a sentencing court must also impose a sentence for violation of § 924(c) that shall run consecutively to the sentence for the predicate crime. There is, therefore, no Double Jeopardy Clause violation for imposing multiple sentences in such circumstances. Further, culpability for a violation

of § 924(c) extends to those who aid and abet the commission of the offense. Having given careful consideration to Conway's double jeopardy claim, the undersigned must conclude that they are wholly without merit. As such, Conway's trial and appellate counsel were not ineffective for failing to raise the meritless double jeopardy claim Conway now asserts. See, *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994)(counsel not ineffective for failing to raise meritless challenge). As Conway has failed to show that his trial and appellate counsel's performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).

### C.  No Evidentiary Hearing is Warranted

A petitioner is entitled to an evidentiary hearing on a habeas motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005)(citing 28 U.S.C. § 2255). No evidentiary hearing is required, "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007); *Anjulo-Lopez v. U.S.* 541 F.3d 814, 817 (8th Cir. 2008). Such are the circumstances in this case. Resolution of Conway's double jeopardy claim can be accomplished by reviewing the record and applicable law. A thorough review of Conway's § 2255 Motion, the files and records of this case, and applicable law, shows that Conway is entitled to no relief. Accordingly, the undersigned recommends the summary dismissal of Conway's § 2255 Motion without an evidentiary hearing.

### D.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has

-23-

made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. See, *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

In the present case, and for the reasons stated above, the undersigned finds that there is no substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

For the reasons and upon the authorities discussed above, Conway's claims are not supported by the record in this case. I recommend that Conway's Motion, filed under 28 U.S.C. § 2255, be **DISMISSED with PREJUDICE** without an evidentiary hearing, and that his related Motion for Summary Judgment also be denied. I further recommend that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 4th day of March, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-24-